UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Edward Marshall,
    Plaintiff
  vs                                Civil Action
                                        No.: 04 12029 DPW
Filias Realty Trust,
    Defendant

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF HIS COMPLAINT

     Now comes the plaintiff in the above-entitled matter and respectfully submits the within Memorandum of Law in Support of His Motion for Summary Judgment, pursuant to F.R.C.P. 56 relative to Count I of his Complaint, sounding in Breach of Contract. In support thereof, the plaintiff, refers this Honorable Court to the following:

I.    **Factual Background**

    The plaintiff, Edward Marshall, is a small business owner who operates a charter business within, and just outside of, the confines of the Essex River, Essex, Massachusetts. Specifically, he owns a pontoon boat which he utilizes to take visitors on excursions in the Essex River, as well as a twenty-three (23) foot pleasure fishing vessel, utilized to take customers on fishing expeditions in and around the waters of the Essex River. Some time in the 1990s, Mr. Marshall began to lease a slip from the defendant, said slip being located in the inner river portion of the Essex River, near the downtown area. It was known by the defendant, at all times relative hereto, that Marshall would be using the slip for the purpose of conducting his business and would, at various times, interchangeably berth both the pontoon and fishing vessel at said slip. On June 4, 2004, the vessel was damaged, while stationary in the slip, by metal poles which protruded from the bed of the river, immediately beneath the fishing vessel. The metal poles punctured the vessel's hull in two locations, one puncture located in the starboard forward

quarter, the other in the port stern quarter. Upon learning that his vessel was sinking, Marshall went to the slip where he began salvage operations, including attempts to pump the water out of the hull of subject vessel. It quickly became clear, however, that the damage was severe, and that the vessel would have to be hauled out. The vessel was towed to a nearby marina where it was removed from the water and puncture holes, heretofore described, were noted by observers. As a result of the damage to the vessel, the plaintiff incurred damages within the framework of repair costs, stowage, and loss of business.

II. **Undisputed Material Facts**

1. A contract existed by and between the defendant and the plaintiff with respect to the leasing of the slip in question (see Defendant's Responses to Plaintiff's Request for Admissions 3 and 4, Exhibit "A" hereto attached).

2. The parties agreed, at the time of Contract inception, that the slip could safely and reasonably accommodate the fishing boat in question (see testimony of 30(b)(6) designee for the defendant, Alex Filias, at page 81, Exhibit "B" hereto attached, and testimony of Office Manager, Paula Filias, at pages 23 and 31, Exhibit "C" hereto attached).

3. The damage to the plaintiff's vessel was caused by the holes located in the hull of said vessel (see A. Filias deposition, page 91, Exhibit "B" hereto attached).

4. Alex Filias acknowledged that the photograph marked as Exhibit 7 at his deposition accurately depicted the hole in the Marshall vessel which caused the sinking (see A. Filias deposition, page 94, Exhibit "B" hereto attached).

5. Alex Filias acknowledged during his deposition, that the puncture hole in the Marshall vessel was caused by a vertical pole located in the Marshall slip (see A. Filias testimony, pages 94 through 95, Exhibit "B" hereto attached).

6. As a result of the damage to his vessel, Marshall suffered damages (see Plaintiff's Answer to Interrogatory No. 7, Exhibit "D", hereto attached).

III. **Argument**

The Contract by and between Marshall and the Defendant must be reviewed within the framework of Maritime Juris Prudence. Specifically, a contract must be wholly maritime in nature to be cognizable in admiralty. Home Insurance Co. v. Merchant's Transp. Co., 16 F.2d 372, 374, (9th Cir. 1926). A maritime contract relates to ships, commerce or navigation on water, to transportation by sea, or to maritime employment. See e.g., J.A.R., Inc. v. Lady Lucille, 963 F.2d 96, 98 (5th Cir. 1992). In the case at hand, there can be no doubt that the lease of a slip is a maritime contract.

The contract between Marshall and the Defendant was oral in nature. No formal written contract was ever generated (see P. Filias deposition, Exhibit "C" hereto attached, p. 25-27 and A. Filias deposition, Exhibit "B" hereto attached, p. 83). The extent of the writings by and between Marshall and the defendant included an initial application, identifying the nature of the vessels for which the slips were to be used, an invoice, and a request for deposit (see P. Filias deposition, p. 25, Exhibit "C" hereto attached). General Maritime Law recognizes and enforces oral contracts. American Dredging Co. v. Miller, 510 U.S. 443, 451, 127 L. Ed. 2nd 285, 114 S. Ct. 981 (1994).

In the case at hand, there is no dispute regarding the parties' respective understanding of the terms of the Contract at the time same was consummated.  Specifically, the Defendant acknowledges that a Contract did exist between the parties (see Defendant's Responses to Plaintiff's Request for Admissions three and four, Exhibit "A" hereto attached).  Marshall's obligation under the lease in place at the time of the incident was to pay $90.00 per foot for the larger of his two vessels, the pontoon vessel, resulting in an annual payment of $2,160.00 (see Invoice for 2004 season, Exhibit "E" hereto attached and A. Filias deposition, Exhibit "B" hereto attached at p. 82-83).  In exchange for the payment to the defendant, the plaintiff received a "water slip" (see P. Filias deposition, Exhibit "C" hereto attached, p. 19).  A water slip is defined by the defendant as "a slip that has access to the water at any tide, high or low" (see A. Filias deposition, Exhibit "B" hereto attached, p. 18).  Marshall was charged more because his slip was a water slip as opposed to a mud slip (A. Filias deposition, Exhibit "B" hereto attached, p. 18).  The defendant understood that Marshall wanted a water slip so that he need not concern himself regarding tidal fluctuations (P. Filias deposition, Exhibit "C" hereto attached, p. 20 - 21).  It was expressly understood between the parties that the slip could safely accommodate both boats listed on the Marshall application, including the pontoon boat and the fishing boat which was damaged in the accident (see P. Filias deposition, Exhibit "C" hereto attached, p. 22 - 23).  Specifically, Paula Filias, the person in charge of contractual matters for the defendant, testified at her deposition:

> Question: I guess what I'm asking you, Mrs. Filias, is at the time that each and every one of the leases including the 2004 lease were, you

>            know, the agreement was put into place,
>            Filias held the understanding the slip would
>            be safe for Marshall to use his boats in,
>            right?
> Answer:    Yes.

(P. Filias deposition, Exhibit "C" hereto attached, p. 23.)

Similarly, Alex Filias, the 30(b)(6) designee of the defendant testified at his deposition as follows:

> Question: Do you know whether anybody from Filias told
>            him or represented to him that the slip would
>            safely and reasonably accommodate his boat?
> Answer:   I believe so.

(See A. Filias deposition, Exhibit "B" p. 81.)

Thus, there is no mystery as to the nature of this bargain. Marshall paid money to the defendant in exchange for a slip which was, in all respects, safe and suitable for the docking of his two designated vessels. Again, the lease was entered into by the defendant with full knowledge as to the size and dimensions of the two boats to be potentially berthed at the dock space.

A review of the record demonstrates that there is no dispute that there was an express understanding between the two parties that the leased dock space was assured to be of safe and usable quality. There is no debate that this was a provision of the agreement contemplated by both sides at the time of contractual consummation. There was the textbook "meeting of the minds" on this point.

In contract formation the element of agreement or mutual assent is often referred to "as a meeting of the minds." **Restatement (Second) of Contracts**, §17, comment 1981. Contract formation requires a bargain in which there is a manifestation of mutual assent to the exchange. Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875,

878, 724 N.E.2d 699 (2000).  The manifestation of mutual assent between contracting parties generally consists of an offer by one and the acceptance of it by the other. **Restatement (Second) of Contract,** §17(1) (1981).

Here the fundamental facts are not in dispute.  Both the 30(b)(6) designee of the defendant, Alex Filias, and the bookkeeper, Paula Filias, testified that, at the time of contract formation, there was an agreed upon expectation that the slips were safe and suitable for use by Marshall.  Indeed, additional consideration was paid by Marshall for a slip represented to be safe and suitable for use with respect to his vessels and, further, that the slip was a "water slip" which would allow total access in any tide.[1]

Given the mutual assent between the parties on this point, assurances regarding the quality of the slip became an integral part of the Contract.

It thus being beyond contention that the quality of the slip was an integral term of the Contract, the only remaining question is whether, as a matter of law, that provision was breached.  Again, the facts are undisputed.  The puncture of the hull of the plaintiff's vessel occurred while it sat, in place, at the defendant's slip.  Indeed, Alex Filias was one of the first people on the scene after the vessel began to sink at the slip.  (A. Filias deposition, Exhibit "B", hereto attached, p. 87-89.)  Thereafter, the vessel was towed directly to an adjacent marina where it was hoisted out.  (A. Filias deposition, Exhibit "B" hereto attached, p. 90.)  The plaintiff and

---

[1] The differentiation between "water slips" and mud slips is important in this analysis, as the piping which punctured plaintiff's vessel extended by a few inches from the bottom of the river.  In order for the damage to be done to the plaintiff's vessel, it had to be actually grounded.  Thus, had the slip been a full water slip, as represented, even with the pipe extending from the

those assisting, including Filias, quickly realized that the boat was sinking as a result of a hole in the bow of the starboard side.  (A. Filias deposition, Exhibit "B: hereto attached, p. 91.)  Once hoisted out, Alex Filias, along with the others, were able to see the hole.  (A. Filias deposition, Exhibit "B", hereto attached, p. 92.)  Mr. Filias testified that the hole that he observed in the hull of the vessel, immediately upon hauling out of same, was about three inches in diameter (A. Filias deposition, Exhibit "B", hereto attached, bottom, no damage would have been done to the plaintiff's vessel. p. 93).  Mr. Filias additionally testified that the cause of the puncture to the Marshall vessel was a pole protruding from the ground in slip number 1.  (A. Filias deposition, Exhibit "B", hereto attached, p. 94-95.)  Mr. Filias also specifically identified a photograph of the pole in his deposition (see A. Filias deposition, Exhibit "B", hereto attached, p. 101 and Exhibit 9 thereto).  As such, the testimony of the 30(b)(6) designee of the defendant, with its corresponding weight to constitute admission, makes it clear that there is absolutely no dispute that Marshall's vessel was damaged as a result of a defect, to wit, a protruding pole, in slip number 1.  It is axiomatic that the contractual provision requiring the safe and suitable utility of the slip was correspondingly breached.

### Conclusion

In summary, the undisputed evidence in the record of this case establishes that there was an oral Contract between the parties, a specific provision of which was an assurance on the part of the defendant relative to the good and merchantable quality of the slip.  The evidence further establishes that the slip was not safe and suitable for usage in the usual course by Marshall.  Whether or not the

defendant has fault, in the tort sense, with respect to the defect in the slip, is another topic for another day.  It is entirely common for parties to assume legal responsibility for unforeseen circumstances in contracts.  Indeed, it is done every day.  In this contract, the defendant undertook the risk of unforeseen problems or defects with the slip.  Indeed, often times marinas will expressly allocate the risk of damage to the vessel, from whatever cause, to the vessel owner.  Such was the case in <u>Woodward v. Tacoma Yacht Club</u>, 377 F.2d 486 (9th Cir. 1967) in which a marina's contractual right to exculpate itself from damage to its' customers vessels was found to be enforceable.  Clearly, parties to such contracts are free to allocate risks of unforeseen events in any manner they see fit.  The defendants could have leased the slip to Marshall with no assurances as to its suitability.  Such assurances were made, however, and contemplated by the parties at the time of contract formation.  Thus, if said provision is enforceable against the vessel owner, so too should such provision be enforceable against the wharfinger.  Stated in its simplest terms, the risk of unforeseen defect vis-a-vie the slip, was borne by the lessor, the defendant herein.  The evidence of breach is self apparent.  The sinking of the vessel, and all of the damage that reasonably flows therefrom, was occasioned by the presence of a protruding pipe in the slip.  In the absence of triable facts with respect to the germain provisions of the Contract, and the equally clear breach thereof, the plaintiff respectfully maintains that a finding for plaintiff on Count I of his Complaint should be entered as a matter of law.

                    Plaintiff,
                    By his attorney,

                    /s/ Brian S McCormick,
                    BRIAN S. MCCORMICK, ESQ.
                    BBO# 550533
                    Orlando & Associates
                    One Western Avenue
                    Gloucester, MA 01930
                    (978) 283-8100

## CERTIFICATE OF SERVICE

I, Brian S. McCormick, attorney for the plaintiff herein, hereby certify that I served a copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment on Count I of His Complaint, by mail, postage prepaid, to Curtis L. S. Carpenter, Esq., Morrison Mahoney LLP, 250 Summer Street, Boston, Massachusetts 02210, on this ___ day of February, 2006.

                    /s/ Brian S. McCormick
                    BRIAN S. MCCORMICK, ESQ.

Cases/Marshall/Edward/Motions/MemoLawSptSumJudgeMotion