UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Edward Marshall,
    Plaintiff

vs                            Civil Action
                                No.: 04 12029 DPW

Filias Realty Trust,
    Defendant

## PLAINTIFF'S ANSWERS TO DEFENDANT, FILIAS REALTY TRUST'S FIRST SET OF INTERROGATORIES

1. Identify the person answering these interrogatories, including your name, address, occupation, and employer ans social security number.

    A1. Edward Marshall; 21 Pickering St. Essex, Massachusetts 01929; self-employed business man; not applicable; 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.

2. Identify when, where and from whom you purchased the boat you allege was damaged in your complaint and its component parts.

    A2. The vessel was purchased in April, 2001 from Rick and Jean Grobe, Essex, Massachusetts.

3. Identify all documents concerning your purchase of the boat and its component parts.

    A3. Objection: The plaintiff objects to this interrogatory on the grounds that it is vague and over broad. Assuming that the defendant is referring to the purchase of the boat and component parts, at the time of initial purchase, he states as follows:
        1. Bill of Sale dated April 24, 2001;
        2. Promissory Note dated April 24, 2001.

*Exhibit "D"*

4. Please describe how you first became aware of the defendant, including a description of the reason why you chose to contract with the defendant for the dockage and/or storage of the boat and its component parts.

   A4. I do not recall specifically how I became aware of the defendant. Somehow, I had learned that there was a slip available on the defendant's premises. I spoke with someone with the defendant's organization, most likely Paula Filias, and worked out the arrangements for the lease of the slip.

5. Identify all documents concerning your business relationship with the defendant.

   A5. To the best of my recollection, there were generally only three documents involved in the business relationship. Each year, Filias would send a form which I had to fill out, identifying the boats that would be using the slip and the cars that were likely to be found in the parking lot. Sometime during the off-season a deposit notice would be sent. Thereafter, a formal invoice was generated by the defendant with respect to the lease of the slip. I believe on one or two occasions, I also received a letter from Paula Filias reiterating that only those leasing the slips could have vehicles on the defendant's premises.

6. Please describe the services which the defendant performed concerning the boat.

   A6. The defendant performed no services with respect to the boat. The defendant agreed to provide a good and serviceable slip to house the two boats used for my business.

7. Please describe the damage you allege occurred to your boat and its component parts.

Exh. "D"

A7. The vessel itself sustained two puncture holes in the hull, causing same to sink at the dock. Additionally, various miscellaneous equipment, gear, and supplies were also damaged as a result of the subject accident. A list of which is hereto attached as Exhibit "A."

8. Please identify any parties that have provided you with estimates of the damage to your boat and component parts.

A8. I received a quote for repair of the vessel from Doucette Fiberglass in the amount of $1,200.00. Additionally, out-of-pocket repair and replacement costs are set out in Exhibit "A." Eventually, in the Spring of 2005, the hull punctures were repaired by Bob Johnson of Gloucester, Massachusetts.

9. Please describe the incident, including, but not limited to, actions taken by you, as well as actions taken by the defendant.

A9. I learned that my vessel, `Real Thrills' had sank, in place, at the slip. I utilized pumps to try to get the water out, to no avail. We were able to have the boat towed to Perkins Marine where it was hauled out. Once the vessel has been hauled out, I discovered the punctures to the hull on the starboard forward quarter, and stern port-quarter of the vessel. Mr. Filias assisted in these efforts.

10. Please describe all communications, including the substance of said conversations, which you had with the defendant or any other party concerning the incident alleged in your complaint and an alleged damage to your boat and its components following the incident alleged in your complaint.

A10. Again, at the time of the incident, all communications between myself and Alex Filias were

*Exh. "D"*

related to the topic of trying to get the boat out of the water, or otherwise secure. We discussed the fact that there were puncture holes in the vessel. Shortly thereafter, we had discussions about the fact that the punctures had been caused by a vertical metal piling located in the slip on the defendant's premises.

11. What did you do immediately following the incident alleged in your complaint?
    A11. Please see plaintiff's answer to interrogatory #9.

12. Please describe, with specificity, the damage to the boat which you claim is a result of the incident.
    A12. There was a hole located in the starboard forward quarter and one in the port stern quarter of the hull which led to the sinking of the vessel, which in turn led to the other damages set out in Exhibit "A" hereto.

13. Please identify any and all insurance policies that covered your boat against damage at the time of the incident alleged in your complaint.
    A13. Not applicable.

14. Please describe in detail any and all steps that you took to mitigate or lessen your personal damages and any alleged or potential damages to your business since the time of the incident alleged in your complaint.
    A14. I hauled the vessel out of the water as quickly as possible so as to minimize the damages to the boat. I kept the boat safely stored until I had the financial ability to undertake the repairs to the hull in Spring 2005. However, I cannot use the boat for regular fishing trips/excursions, as I did before the sinking, due to reliability concerns, and

*Exh. "D"*

passenger safety.

15. Identify all post-incident inspections and/or appraisals of the boat, including the name, business address, and telephone number of the person who conducted the inspection and/or appraisal and what documents were created as a result of the inspections and/or appraisal.
    A15. The defendant had formal surveys/appraisals undertaken. I also informally assessed the damage to the vessel, its equipment, and supplies.

16. Please describe the repair, redecoration, and refurbishment of the boat completed subsequent to the incident, including the name, business address, and telephone number of the company or individual that performed the repairs.
    A16. In 2005, the hull punctures were repaired by Bob Johnson, Gloucester, Massachusetts. I also have refitted the boat with various components by myself. I also re-supplied the vessel with necessaries.

17. Please identify any witnesses to the incident alleged in your complaint, or any persons who observed the alleged damage to your boat following the incident alleged in your complaint.
    A17. A tenant of the Landy Apts. Was the first to note the sinking, as far as I know. I do not know his name. Thereafter various people were on the scene, including Mr. Movani, Alex Filias, and some Filias workers, Ed Perkins, Art Wonson, and Ralph for Perkins Marine.

18. Please identify any witnesses you intend to call at the trial of this matter.
    A18. No determination has been made as to the identity of

*Exh. "D"*

the witnesses who will be testifying at the trial of this matter. I understand that this answer will be seasonally supplemented prior to trial in accordance with any pre-trial orders.

19. Please identify any expert witnesses that you intend to call at the time of this matter, including their qualifications and a summary of their expected testimony, as well as the grounds for their opinions.

    A19. My attorneys inform me that no determination has been made with respect to the identities of expert witnesses to testify at the trial of this matter. I understand that this response will be seasonally supplemented prior to trial.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 26 DAY OF October, 2005.

EDWARD MARSHALL

CERTIFICATE OF SERVICE

I, Brian S. McCormick, attorney for the plaintiff herein, hereby certify that I served a copy of the foregoing Plaintiff's Answers to Defendant, Filias Realty Trust's First Set of Interrogatories, by mail, postage prepaid, to Jeffrey D. Kiesling, Esq., Morrison Mahoney LLP, 250 Summer Street, Boston, Massachusetts 02210, on this 28th day of October, 2005.

BRIAN S. MCCORMICK, ESQ.

Cases/Marshall/Edward/Discovery/PltfsAnsDefsInts

Exh. "D"

Miscellaneous Gear and Supplies Damaged by Immersion in sea water and oil.

| Quantity | Item | Cost |
|---|---|---|
| 9 | Fishing rods and reels quote from fin & feather to clean lubricate and respool line @$25.00 ea. | $225.00 |
| 1 | Black and white 5" AC/DC television not repairable | $50.00 |
| 1 | VHF FM marine radio not repairable | $150.00 |
| 2 | Packages (3 each) 12 Ga Areal flare @ $10.00 ea | $20.00 |
| 1 | Package of 3 hand held flares (orion) | $20.00 |
| 1 | Package of 3 bristol orange smoke flares | $30.00 |
| 1 | Package of 3 bristol red smoke flares | $30.00 |
| 1 | Fuel filter/water separator cartridge | $9.50 |
| 1 | Spare spark plug | $3.00 |
| 2 | NOAA Navigation charts | $40.00 |
|  | Food service supplies- plastic ware, plates, cups coffee, creamer, no stick spray, toilet paper paper towels, salt, pepper, tea bags etc... | $45.00 |
| 2 | Pkg of 8 duracell batteries (9.00 each) | $18.00 |
| 1 | recoiling fresh water hose | $38.00 |
| 1 | First aid kit and supplies | $55.00 |
| 1 | New never used portable gas grill | $136.90 |
| 1 | Custom canvas cabin enclosure (1 yr old) permanently stained with lube oil | $550.00 |
| 1 | Craftsman large 4 battery flashlight and batteries | $25.00 |
| 1 | Maptech navigation chart | $19.95 |
| 7 | Can and bottle holders | $14.00 |
|  | miscellaneous cooking utensils (toaster, pots, pans) | $20.00 |
| 2 | 16 oz. Propane bottles @ 5.00 each | $10.00 |
| 1 | Custom cabin marine carpet | $100.00 |
| 1 | Custom made wood bait cutting board (priceless) oil contaminated and unusable | $50.00 |
|  | Oil stained lifejackets (PFD's) listed below |  |
| 1 | Type II personal floatation device | $11.33 |
| 6 | Type 1 personal floatation device - adult (43.38 ea) | $260.28 |
| 2 | Type 1 personal floatation device - child | $86.76 |
| 2 | Type IV personal floation device - ($14.99 ea) | $29.98 |
| 3 | Fish totes ($5.00 each) | $15.00 |
| 3 | Fire extinguishers ($30.00 ea) | $90.00 |
| 1 | Blanket (oil stained) | $25.00 |
| 1 | Men's foul weather gear | $35.00 |
| 1 | stove reconditioning | $100.00 |
| 10 hrs. | 10 hours labor to degrease and clean tackle boxes, fenders, fishing lures, weights, bobbers, hooks, etc.. | $200.00 |
| 45 hrs | 45 hours @ $50.00 hr to stabilize boat (flushing motor) | $2,250.00 |
|  | jeans ( 2 pair), flannel shirt (2) | $80.00 |
|  | bug spray, sunblock, lipbalm, cleaning supplies | $25.00 |
|  | towing service | $50.00 |
|  | damage to vehicle (clutch) from rescuing sunken vessel | $1,173.00 |
|  | emergency haul out | $175.00 |

(Exhibit "A")

Exh. "Additions on D"

| Item | Amount |
|---|---|
| boat storage ($25.00 per day) 94 Days 6/4/04 9/6/04 | ~~$1,000.00~~ 2350.00 |
| Lost wages due to cancellation of fishing trips and inability to book trips in June, July, August, September | $15,000.00 |
| Purchase of brochures to advertise fishing trips | $698.25 |
| Photos of boat damage and sunken pipes in boat slip | $10.50 |
| Estimate to repair damage to fiberglass | $1,410.00 |
| 50 gallons of gas contaminated @2.19/gal. | $109.95 |
| 2 cans large WD 40 @ 6.00 each | $12.00 |
| 1 gallon diesel fuel | $1.92 |
| Hose repair and replacement nozzle | $7.90 |
| ATF | $15.00 |
| Oil Filter | $5.00 |
| Oil and PB Spray | $40.00 |
| Commercial fishing license | $65.00 |
| Pain and suffering due to hypothermia caused during rescue | $1,000.00 |
| **Total** | **$25,841.22** |

1350.00
2699.22

Winter Storage 4/05      586.50
                       27577.72

Miscellaneous Fishing Gear Lost    100.00
                                 27,677.72

24hr Labor Time Quotes, Adjusters, Appraisers, Surveyors    600.00
at 25$/hr  6/10/04 - 7/19/04
                                                          28,277.72

(Exh. "A")  Exh. "D"